**William Clell BISHOP, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–84–0175–CR.**

Court of Appeals of Texas, Amarillo.

Aug. 8, 1985.

Morris Overstreet, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., Allen B. Walter, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

Upon his plea of nolo contendere before a jury to the offense of involuntary manslaughter, appellant William Clell Bishop, Jr., was found guilty, and the jury assessed his punishment at confinement for five years and a fine of $5,000. Appellant contends that he was entitled to, and the trial court erred in not granting him, a new trial because (1) juror Marilyn L. Dyer, who became foreman of the jury, withheld information on voir dire examination which subjected her to challenge, and (2) the jury, during its deliberations, received other evidence from foreman Dyer which was detrimental to him. Overruling the first ground of error and sustaining the second one, we reverse and remand.

The State alleged in the first count of a three-count indictment, the count to which appellant pleaded nolo contendre, that appellant, by accident and mistake when operating a motor vehicle while intoxicated, caused the death of an individual. During the voir dire examination of the jury panel, appellant's counsel told them the evidence will clearly show that appellant was intoxicated, that an accident occurred, and that people lost their lives. He then asked:

> Is there anyone on the first row who, because of those three facts, would, at this time, feel that they could not be a fair and impartial juror?

In her turn, Ms. Dyer answered, "Yes," which, in the context of answers given by the panelists previously answering, apparently was accepted as an affirmation that she could be a fair and impartial juror.

Later in the examination, appellant's counsel inquired:

> Okay. Is there anyone on the jury panel who has had a close friend or relative who has been involved, either as a victim, or as an accused, you know, in an offense involving drinking?

When several members of the panel raised their hands, counsel made this general inquiry:

Is there anything about that particular incident or incidents, if there are more than one, that would affect you or color your judgment in any form, shape, or fashion, if you were selected to serve as a juror in this particular case?

And, then, counsel, calling the names of those who had raised their hands, received a "No" response from Ms. Dyer.

Afterwards, it was developed in connection with appellant's motion for new trial, that Ms. Dyer had been involved in two automobile accidents with intoxicated drivers. The first one, occurring approximately eight years before appellant's trial, left Ms. Dyer's son, in the word of the testifying witness Fonti, "a vegetable." The second accident happened about two years before the trial.

Appellant contends that Ms. Dyer's withholding of this information, which he says in all likelihood would have resulted in her being challenged for cause or preemptorily, is misconduct that entitles him to a new trial. We do not agree, noting that in developing his contention, appellant does not argue that the information possessed by Ms. Dyer prevented her from being a fair and impartial juror.

■ The voir dire process is designed to select, to the fullest extent possible, disinterested, impartial and truthful jurors who, as the jury, will perform the duty assigned to them. To insure such a jury, the attorneys have the obligation to ask questions calculated to elicit any information which indicates a prospective juror's inability to be fair, impartial and truthful. Unless the attorneys ask such questions, the undisclosed information possessed by one who becomes a juror is not "withheld" in the sense that it constitutes misconduct which would warrant a reversal. *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Cr.App.1980).

■ Here, appellant's counsel learned from Ms. Dyer's response that she had a close friend or relative who had been involved in some manner in an offense involving drinking. But, learning that, he only asked her if there was anything about the particular incident(s) that would affect her judgment to serve as a juror in this case, and received a negative answer. He did not pursue the subject by asking questions designed to produce the information claimed to be withheld. Under these circumstances, it cannot be said that Ms. Dyer "withheld" the information. *Id.* at 136–37. Appellant's first ground of error is overruled.

■ Appellant applied for and produced testimony of his eligibility to be granted probation. During the jury's deliberation on punishment, according to juror Frances J. Fonti, the only juror who furnished an affidavit in support of and testified at the hearing on appellant's motion for new trial, an unidentified juror asked, "If you give him probation and this happened—occurred again, how could you ever live with yourself?" Then, as Ms. Fonti testified, Ms. Dyer, the foreman, replied, "Don't think it can't happen to you. It happened to me twice." Ms. Dyer's statement, so Ms. Fonti asserted and maintained, caused her and two other jurors to change their votes from probation, which they favored, to confinement.[1]

The statement by Ms. Dyer, appellant contends in stating it in different words, constituted receipt of other evidence by the jury during its deliberation which was detrimental to him and, as a consequence, entitled him to a new trial. We agree.

A new trial "shall be granted the defendant ... where the jury, after having retired to deliberate upon a case, has received other evidence.... " Tex.Code Crim.Proc. Ann. art. 40.03(7) (Vernon 1979). To in-

---

1. We exclude, as the trial court likely excluded, from consideration Ms. Fonti's testimony that Ms. Dyer's statement caused two other jurors to change their votes from probation, for this testimony, presented without any showing of a basis for Ms. Fonti's personal knowledge, is pure conjecture of those jurors' states of mind. 2 R. Ray, Texas Law of Evidence Civil and Criminal § 1428 (Texas Practice 3d ed. 1980).

voke the operation of the statute, it must be shown that (1) other evidence was actually received by the jury, and that (2) such evidence was detrimental to appellant. *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Cr.App.1981), *aff'd en banc on rehearing*, 630 S.W.2d at 275 (1982).

In the jury's deliberation on punishment, a central issue was whether probation would be recommended. Since the State does not dispute, but indeed accepts, Ms. Fonti's testimony that Ms. Dyer replied to the juror's question by informing the jurors that the offense for which probation was being considered could happen again because it happened to her twice, the occurrence in the jury room is uncontroverted and established. *Davis v. State*, 168 Tex. Cr.R. 399, 328 S.W.2d 315, 316 (1959). It follows that Ms. Dyer's information which was not adduced during the trial, was new evidence on the central issue of probation which, within the meaning of article 40.-03(7), constituted other evidence received by the jury. *Garza v. State, supra*, at 274; *Davis v. State supra*.

 Still, the State defends the trial court's overruling of appellant's new trial motion by arguing that the record merely raises the fact issue whether Ms. Dyer's statement affected Ms. Fonti's verdict, which was a matter for the court's determination.[2] We do not agree.

Once other evidence is received by the jury, the appellate court will not speculate on its probable effects on the jury, but considers whether the character of the evidence was detrimental to appellant. *Alexander v. State*, 610 S.W.2d 750, 753 (Tex. Cr.App.1980). If so, the requirement for a new trial is considered a "per se rule." *Hunt v. State*, 603 S.W.2d 865, 869 (Tex.Cr. App.1980). In this cause, the character of the other evidence received by the jury not only was adverse to appellant on the cen-

tral issue of probation, but it was further shown that it was detrimental to him in that it caused Ms. Fonti to change her vote for probation to a vote for five years confinement. *Accord Bearden v. State*, 648 S.W.2d 688, 693 (Tex.Cr.App.1983).

Since the record as to what occurred during the jury's deliberation is not controverted and show that the jury did in fact receive other evidence detrimental to appellant, article 40.03(7) requires a new trial. *Eckert v. State*, 623 S.W.2d 359, 364 (Tex. Cr.App.1981). Appellant's second ground of error is sustained.

The judgment is reversed and the cause is remanded.

---

**2.** The State also parenthetically notes that juror Fonti is attempting to impeach her own verdict, which ordinarily would violate the general rule that one may not impeach or explain his verdict by showing the reasoning or mental process by which he reached his decision. *See, e.g., Ruben v. State*, 645 S.W.2d 794, 797 (Tex.Cr.App.1983).

We do not credit the State's note, for a long established exception to the general rule against impeachment of the verdict allows proof by a juror of jury misconduct for which a new trial is statutorily mandated. *Stallworth v. State*, 148 Tex.Cr.R. 255, 186 S.W.2d 252, 256 (1945).